**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION**

| | |
|---|---|
| United States Fidelity and Guaranty Company, ) ) Plaintiff, ) ) vs. ) ) Southern Insulation, Inc., ) ) Defendant. ) ) | C.A. No.: 6:19-cv-2980-HMH <br><br><br> **JOINT 26(F) DISCOVERY PLAN AND LOCAL RULE 26.03 RESPONSES** |

The parties submit to the Court the following Rule 26(f) Discovery Plan and provide the following information required by Local Rule 26.03:

### RULE 26(f) DISCOVERY PLAN:

1. **What changes should be made in the timing, form, or requirement for disclosures under Rule 26(a), including a statement of when initial disclosures were made or will be made.**

    **RESPONSE:** The parties have agreed that Rule 26(a) initial disclosures will be made March 13, 2020.

2. **The subjects on which discovery may be needed, when discovery should be completed, and whether discovery should be conducted in phases or be limited to or focused upon particular issues.**

    **RESPONSE:** Plaintiff United States Fidelity & Guaranty Company ("USF&G) believes that discovery can be completed consistent with the Court's Conference and Scheduling Order. Defendant Southern Insulation, Inc. ("Southern") believes that the proposed deadlines in the Conference and Scheduling Order should be extended by approximately two and one-half months, as set forth in Southern's proposed Amended Conference and Scheduling Order. Southern proposes that the discovery deadline in this case should be October 26, 2020.

> The parties anticipate that discovery may be needed regarding the existence, or non-existence, of any policies issued by USF&G to Southern. The parties do not believe discovery should be conducted in phases or limited to or focused upon particular issues.

3. **Any issues about disclosure or discovery of electronically stored information, including the form or forms in which it should be produced.**

> **RESPONSE:** Because there is likely to be a minimal amount of potentially discoverable electronically stored information ("ESI"), the parties do not believe there will be any issues regarding potential ESI. The parties agree that, to the extent ESI is requested and discoverable, they will meet and confer to discuss any issues that arise regarding production of any ESI.

4. **Any issues about claims of privilege or of protection as trial-preparation materials, including – if the parties agree on a procedure to assert these claims after production – whether to ask the court to include their agreement in an order.**

> **RESPONSE:** If any privileged or otherwise protected documents or ESI are identified as responsive to discovery and withheld on grounds of attorney-client privilege, work product immunity or other applicable privilege or immunity, the parties agree that the withholding party will serve a log of such documents or ESI within ten (10) days of that party's production of responsive documents. The log will identify the document or ESI for which a privilege is asserted, the sender, recipient(s), including persons copied, the date, a brief description of the document sufficient to allow the receiving party to assess the applicability of the privilege, and the nature of the privilege being asserted. The parties further agree that the "claw back" of inadvertently produced privileged or trial preparation materials shall be governed by the applicable provisions of Fed. R. Civ. P. 26(b)(5), and that such inadvertent production shall not constitute a waiver of the protections afforded such documents.

5. **Changes to be made in the limitations on discovery imposed under the Federal Rules of Civil Procedure or by local rule, and what other limitations should be imposed.**

> **RESPONSE:** None at this time.

6. **Any other orders that should be entered by the Court under Rule 26(c) or under Rule 16(b) or (c).**

**RESPONSE:** None at this time.

## LOCAL RULE 26.03 DISCLOSURES

**(1)     A short statement of the facts of the case.**

*Response of Plaintiff United States Fidelity & Guaranty Company*

Before its dissolution by forfeiture in 1991, Southern Insulation, Inc. ("Southern") was a business entity that engaged in insulation-related business activities for several decades, including the sale of certain products that are alleged to have contained asbestos fibers. Southern has been named in a number of lawsuits filed by individuals who have sustained asbestos-related bodily injuries. The asbestos-related personal injury suits brought in South Carolina were assigned to the Honorable Jean H. Toal, who appointed Peter D. Protopapas ("Protopapas"), a partner at the firm of Rikard & Protopapas, LLC, Attorneys and Counselors at Law, to serve as Southern's Receiver and to administer Southern's assets, including its insurance policies.

On June 4, 2019, Protopapas advised United States Fidelity and Guaranty Company ("USF&G"), by way of letter to USF&G's parent company Travelers Casualty and Surety Company ("Travelers"), that he had been appointed Receiver for Southern and that Southern had been served with asbestos-related bodily injury complaints in at least 8 (eight) legal actions. Protopapas asserted that USF&G was obligated to defend Southern in these lawsuits because he alleged that USF&G had issued at least one liability insurance policy to Southern in 1967. This was the first notice that Travelers and/or USF&G received that Southern faced any asbestos-related liability.

Immediately thereafter, USF&G conducted a thorough review of its business records, going back several decades, and attempted to locate any liability insurance policies it may have issued to Southern in the past. USF&G has not been able to locate any such policy. Protopapas similarly has been unable to locate any such policy and has not provided USF&G with any information or documentation regarding the terms and conditions of the alleged 1967 policy other than two unauthenticated certificates of insurance that refer to Junious Benson Anlley & Jesse Cleveland Smith dba Southern Insulation Co. as Named Insured and list a USF&G policy number, policy period and limits of liability. USF&G has used that information to try to determine if that policy was ever issued or exists, but it has not located any such policy. USF&G therefore asserts, and has advised Protopapas, that it has no obligation to defend and/or indemnify Southern.

Protopapas nevertheless continues to assert on Southern's behalf that USF&G is obligated to defend and/or indemnify Southern in the asbestos-related liability claims pending

against it.  Given that the existence, terms, conditions, and/or provisions of any insurance policy issued by USF&G have not been established, USF&G brought this declaratory judgment action on October 18, 2019 to obtain a declaration from this Court that it is not obligated to defend and/or indemnify Southern.

On February 13, 2020, Southern filed its answer to USF&G's complaint and asserted two counterclaims.  The counterclaims contain misleading and false allegations that USF&G strenuously disputes.  Count I seeks a declaration that USF&G issued a policy in 1967 to Southern, i.e., Counterclaim I simply seeks the opposite of the declaration sought by USF&G.  Count II asks that this Court to issue nine (9) sub-declarations that state how the alleged policy would operate, despite the absence of the alleged policy's material terms.

### *Response of Defendant Southern Insulation, Inc.*

Southern operated as an insulation contractor from about 1967 until 1991.  Some of that insulation allegedly contained asbestos and, as a result, Southern has been named as a defendant in asbestos lawsuits filed by individuals who contracted mesothelioma and other asbestos-related diseases.  Most of those lawsuits are pending in South Carolina state court and have been assigned to the Honorable Jean H. Toal.  Because Southern has been administratively dissolved since 1991, Judge Toal appointed Peter D. Protopapas as the Receiver for Southern to administer Southern's assets, including its insurance policies.  (*See* ECF NO. 10-2.)

The Receiver tendered several asbestos lawsuits naming Southern as a defendant to insurance companies that issued policies to Southern, demanding that they defend and indemnify Southern.  USF&G is one such carrier.  Southern is in possession of certificates of insurance for Southern for 1967 and 1968 listing policy number 2CC002032 for manufacturers' and contractors' liability.  However, USF&G denies that it issued primary general liability policies to Southern for those years.

In addition to locating certificates of insurance, which are secondary evidence of the existence of USF&G coverage, the Receiver has discovered evidence of a corporate policy at Travelers/USF&G, described internally as a "purge," which required the intentional destruction of insurance policies to avoid future liability to policyholders.  (*See* ECF No. 10-6.)  The Receiver believes the policies issued to Southern were destroyed during this purge.

 (2)     **The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

### *Response of Plaintiff United States Fidelity & Guaranty Company*

a. **Representative(s) of United States Fidelity & Guaranty Company.**  Representatives of USF&G are expected to testify regarding the facts and circumstances concerning whether the alleged policy was issued, the search for the alleged policy, the results of that search, and if necessary, the operation of the alleged policy.

b. **Records Custodian(s) for United States Fidelity & Guaranty Company.**  A records custodian for USF&G is expected to testify to the existence, or non-existence, of any records maintained by USF&G as they relate to Southern, including USF&G's record retention practices and policies as they relate to Southern.

c. **Representative(s) of Glover Brothers, Inc.**  A representative of Glover Brothers, Inc. may be required to testify to the facts and circumstances surrounding the unauthenticated certificates of insurance; whether any policy was in fact issued by USF&G to Southern; the terms and conditions of the alleged policy; and/or whether there were any material changes to or cancellation of the alleged policy.

d. **Representative(s) of Milliken & Company.**  A representative of Milliken & Company may also be required to testify to the facts and circumstances surrounding the unauthenticated certificates of insurance; whether any policy was in fact issued by USF&G to Southern; the terms and conditions of the alleged policy; and/or whether there were any material changes to or cancellation of the alleged policy.

e. **Representative(s) of Southern Insulation, Inc.**  A representative of Southern may also be required to testify to the facts and circumstances surrounding the alleged procurement of the asserted USF&G policy; the coverage sought by Southern; the terms and conditions contained within the alleged policy; whether any policy was in fact issued; whether Southern ever tendered any claims to USF&G; whether USF&G ever handled or paid such claims; the search for and existence of records relating to the alleged policy; and any business relationship between USF&G and Southern.

f. **Peter D. Protopapas.**  Protopapas may be required to testify to the facts and circumstances surrounding the alleged procurement of the asserted USF&G policy; the coverage sought by Southern; the terms and conditions contained within the alleged policy; whether any policy was in fact issued; whether Southern ever tendered any claims to USF&G; whether USF&G ever handled or paid such claims; the search for and existence of records relating to the alleged policy; and any business relationship between USF&G and Southern

Because discovery and investigation into this matter are ongoing, USF&G reserves the right to modify, amend, or supplement this disclosure. USFG also reserves the right to call any witnesses identified by Defendant.

***Response of Defendant Southern Insulation, Inc.***

a. **Representative of Glover Brothers, Inc.**  A Glover Brothers representative is expected to testify regarding the following topics:  all insurance policies sold or issued to Southern Insulation, Inc. and/or Junious Benson Nalley and/or Jesse Cleveland Smith (collectively referred to herein as "Southern"); all underwriting files; the details of Glover Brothers, Inc.'s relationship with Southern, including all related documentation; and the details of Glover Brothers, Inc.'s relationship with USF&G, including all related documentation.

b. **Representative of Johnson & Johnson, Inc.**  A representative of Johnson & Johnson, Inc. is expected to testify regarding the following topics: all insurance policies sold or issued to Southern; all underwriting files; the details of Johnson & Johnson, Inc.'s relationship with Southern, including all related documentation; and the details of Johnson & Johnson, Inc.'s relationship with USF&G and/or The Travelers Indemnity Company, including all related documentation.

c. **Representative of United States Fidelity and Guaranty Company ("USF&G").** A USF&G representative is expected to testify regarding the following topics: The details of USF&G's relationship with Southern from its beginning through today, including all related documentation; the nature and terms of any insurance coverage that USF&G issued to Southern, or any other policy that provided coverage to Southern; USF&G's efforts to locate any policy of insurance issued by USF&G to Southern, or naming Southern as an additional insured; the May 1, 1984 memorandum written by Charles Watson, former Vice-President of USF&G, concerning the purging and discarding of USF&G files; the December 6, 1985 USF&G "Claim Department Guidelines for Claims Involving Toxic or Hazardous Waste Substances"; the March 10, 1989 Memorandum written by USF&G's Kenneth Ford concerning document destruction and retention issues; the depositions of the following individuals taken in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2): Richard Thompson, Walter Radke, Robert Kostecki, Adam Lutz, Charles B. Watson, Robert Schaller, Randolph Rohrbaugh, Kenneth Ford, William J. Flint, Esther Zells, Ronald Wohlust, Carolyn Maynard, Lucille Snyder, and Sharon Dissinger; what insurance USF&G is acknowledging; the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013); the depositions of the following individuals taken in the case styled Zurich American Insurance Company v. Covil Corporation et al, United States District Court for the

Middle District of North Carolina Case No.: 1:18-CV-932: Mark Esposito, Craig Johnson, Kenneth Kupec, and David Nanzig.

d. **Richard Thompson, USF&G.** Mr. Thompson is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

e. **Walter Radke, USF&G.** Mr. Radke is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

f. **Robert Kostecki, USF&G.** Mr. Kostecki is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

g. **Adam Lutz, USF&G.** Mr. Lutz is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

h. **Charles B. Watson, USF&G.** Mr. Watson is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. The May 1, 1984 memorandum written by Charles Watson, former Vice-President of USF&G, concerning the purging and discarding of USF&G files. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

i. **Robert Schaller, USF&G.** Mr. Schaller is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

j. **Randolph Rohrbaugh, USF&G.** Mr. Rohrbaugh is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

k. **Kenneth Ford, USF&G.** Mr. Ford is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. The March 10, 1989 Memorandum written by Kenneth Ford concerning document destruction and retention issues. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

l.  **William J. Flint, USF&G.**  Mr. Flint is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

m.  **Esther Zells, USF&G.**  Ms. Zells is expected to testify regarding the following topics:  USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

n.  **Ronald Wohlust, USF&G.**   Mr. Wohlust is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

o.  **Carolyn Maynard, USF&G.**  Ms. Maynard is expected to testify regarding the following topics:  USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

p.  **Lucille Snyder, USF&G.**  Ms. Snyder is expected to testify regarding the following topics:  USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur

Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

q. **Sharon Dissinger, USF&G.** Ms. Dissinger is expected to testify regarding the following topics: USF&G's document retention policies, the purge and destruction of historical insurance policies. Deposition testimony in the case styled Western MacArthur Company v. United States Fidelity & Guaranty Company, Alameda County Superior Court Case No. 721595-7 (consolidated with Case No. 828101-2), and the events and documents described in the document entitled Exhibit L Affirmation of Daniel J. Stujenske, Filed in United States Fidelity vs. American Re-Insurance, Docket Number 604517_2002 (N.Y. Sup. Ct. September 24, 2013).

r. **David Nanzig, USF&G.** Mr. Nanzig is expected to testify regarding the following topics: USF&G's document retention policies, the purging of documents and destruction of historical insurance policies. Deposition testimony given in deposition in the case styled Zurich American Insurance Company v. Covil Corporation et al, United States District Court for the Middle District of North Carolina Case No.: 1:18-CV-932.

s. **Bradley S. Dion, Travelers.** Mr. Dion is expected to testify regarding all efforts made by USF&G to locate policies issued by USF&G to Southern.

t. **Mark Esposito, Travelers.** Mr. Esposito is expected to testify regarding the following topics: Policy searches and procedures. Deposition testimony given in deposition in the case styled Zurich American Insurance Company v. Covil Corporation et al, United States District Court for the Middle District of North Carolina Case No.: 1:18-CV-932.

u. **Craig Johnson, Travelers.** Mr. Johnson is expected to testify regarding the following topics: Policy documents, policy reconstruction, underwriting, coverage analysis, defense of insured. Deposition testimony given in deposition in the case styled Zurich American Insurance Company v. Covil Corporation et al, United States District Court for the Middle District of North Carolina Case No.: 1:18-CV-932.

v. **Kenneth Kupec, Travelers.** Mr. Kupec is expected to testify regarding the following topics: Certified policies, policy documents, policy reconstruction. Deposition testimony given in deposition in the case styled Zurich American

>       Insurance Company v. Covil Corporation et al, United States District Court for the
>       Middle District of North Carolina Case No.: 1:18-CV-932.

In addition, the Receiver anticipates that other, unknown individuals may have discoverable information that the Receiver may use to support his claims or defenses. The Receiver incorporates by reference any other individuals disclosed by other parties in this matter and reserves the right to supplement this disclosure pursuant to Federal Rule of Civil Procedure 26(e). The Receiver also reserves the right to obtain discovery in support of his claims or defenses from any witness identified in any other party's Rule 26(a)(1) disclosure or other discovery responses.

**(3)   The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

The parties have not yet determined the names and subject matters of experts that may be needed for trial. The parties will provide this information in accordance with the deadlines set forth in the Conference and Scheduling Order, although the parties disagree as to when those deadlines should be.

**(4)   A summary of the claims or defenses with statutory and/or case citations supporting the same.**

*Response of Plaintiff United States Fidelity & Guaranty Company*

**Request for Declaratory Judgment:**

The Declaratory Judgment Act, provides that: "[i]n a case of actual controversy within its jurisdiction, … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." 28 U.S.C. § 2201. A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and ... when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) (citations omitted).

When an insurance policy has been lost or misplaced, the insured bears the burden to prove that a claim is within the coverage of the missing insurance policy. *See Burt Rigid Box, Inc. v. Travelers Property Cas. Corp.*, 302 F.3d 83, 59 Fed. R. Evid. Serv. 936 (2d Cir. 2002)

(applying New York law); *Chickasha Cotton Oil Co. v. Houston Gen. Ins. Co.*, 2002 WL 1792467 (Tex. App. Dallas 2002). The insured must allege and prove the existence and material terms of any alleged insurance policy. *Southern Union Co. v. Liberty Mut. Ins. Co.*, 581 F. Supp. 2d 120 (D. Mass. 2008) (applying Massachusetts law); *PSI Energy, Inc. v. Home Ins. Co.*, 801 N.E.2d 705 (Ind. Ct. App. 2004); *Century Indem. Co. v. Aero-Motive Co.*, 254 F. Supp. 2d 670 (W.D. Mich. 2003) (applying Michigan law). In the Fourth Circuit, courts will not "create policy provisions that do not exist." *Vaughan*, 183 N.C.App. at 34-35. Courts in the Fourth Circuit have also held that an insurer cannot be obligated to defend or indemnify a policyholder when the policyholder has failed to allege and present "clear evidence as to the terms and conditions" of the policy under which it seeks coverage. *Klopman v. Zurich American Ins. Co. of Illinois*, 233 Fed.Appx. 256, 4-5, 2562007 WL 1381599 at *261-62 (4th Cir. 2007)(applying Maryland law).

Despite the parties' best efforts, no one has been able to locate or confirm the existence of any policy issued to Southern by USF&G. Southern has failed to identify any of the terms and conditions of any alleged policy whereby USF&G would have an obligation to defend and/or indemnify Southern in any asbestos-related suit. Accordingly, USF&G requests entry of the following judicial declaration:

> "Given that the existence, terms, conditions, and/or provisions of any insurance policy issued to Southern Insulation, Inc. ("Southern") by United States Fidelity and Guaranty Company ("USF&G") that provides liability insurance coverage for asbestos-related personal injury claims has not been established, USF&G is neither obligated to provide Southern with a defense with respect to such claims, nor is USF&G obligated to indemnify any liability Southern may have as a result of such claims."

### **Defenses to Counterclaims:**

Southern asserts two counterclaims against USF&G. In Counterclaim I, Southern seeks a declaration that USF&G issued primary general liability policies to Southern in 1967 and 1968. In Counterclaim II, Southern seeks a number of declarations regarding the terms of these alleged policies and the scope of coverage that should be afforded to Southern.

Counterclaim I should be denied because Southern, the party with the burden of alleging and proving that it is entitled to coverage, cannot establish that any policy existed in this case or that it would have qualified as an insured under any such policy. Southern has failed to locate any policy issued to it by USF&G and has only put forward unauthenticated secondary evidence that some type of insurance coverage may have existed. Courts around the country have consistently held that certificates of insurance, on their own, are not sufficient to establish that a contract existed or that coverage was afforded to the alleged insured. *See Atlantic Specialty Insurance Company v. Coastal Environmental Group*, 368 F.Supp.3d 429, 449, (E.D.N.Y. 2018) ("[a] certificate of insurance … is not conclusive proof that the contract exists, and not, in and of itself, a contract to insure."); *Hunt v. Ciminelli-Cowper Co., Inc.*, 93 A.D.3d 1152, 939

N.Y.S.2d 781 (4th Dep't 2012) ("[i]t is well established that a certificate of insurance, by itself, does not confer insurance coverage,") (citing *Sevenson Envtl. Servs., Inc. v. Sirius Am. Ins. Co.,* 74 A.D.3d 1751, 1753, 902 N.Y.S.2d 279 (N.Y. App. Div. 2010)); *Nautilus Ins. Co. v. Southern Vanguard Ins. Co.*, 899 F.Supp.2d 538 (N.D. Texas 2012) (holding that certificate of insurance could not be considered in determining whether the insurer had a duty to defend.); *Alabama Electric Coop., Inc. v. Bailey Constr. Co., Inc.*, 950 So. 2d 280 (Ala. 2006) (holding that an additional insured could not rely on certificates of insurance alone as proof of coverage.). Without more, Southern is not entitled to a declaration that the USF&G policy existed or that it would have qualified as an insured under any such policy.

The declarations sought in Counterclaim II must also be denied because Southern has failed to plead any facts regarding the terms and conditions of any alleged USF&G policy. Assuming *arguendo* that Southern' s unauthenticated certificates of insurance are evidence that a policy may have existed, they contain no information regarding the terms of the alleged agreement necessary to determine the scope of coverage provided to Southern, including any definitions, conditions and/or exclusions. As discussed above, courts in the Fourth Circuit have held that that an insurer cannot be obligated to defend or indemnify a policyholder when the policyholder has failed to allege and present "clear evidence as to the terms and conditions" of the policy, *Klopman*, supra, and will not "create policy provisions that do not exist." *Vaughan*, supra.

Here, Southern is attempting to rely on its inability to prove the terms and conditions of the alleged USF&G policy as a pretext for this Court to create a policy and policy provisions after the fact. Indeed, in the absence of any evidence whatsoever about the terms and conditions of the alleged policy, and without providing any other bases upon which it relies, Southern is asking this Court to make no less than 9 (nine) specific declarations about how the alleged policy should operate. Each of those declarations is unsurprisingly slanted to favor Southern and damage USF&G.

Because Southern has failed to identify the actual terms and conditions of the alleged policy, it has not pled any facts that would allow this court to declare how the policy would operate—even if it ever existed. This Court cannot make any declarations regarding USF&G's duty to defend, and cannot simply construct a policy and policy provisions that Southern would like to exist. Accordingly, Counterclaim II should be denied.

Southern's counterclaims are premised on a series of allegations concerning supposed USF&G document destruction in the 1980s. USF&G anticipates that Southern intends to argue that the document destruction allegations entitle Southern to the declaration that a USF&G policy exists and that its material terms are proven despite the lack of sufficient evidence of any such policy issued by USF&G to Southern. USF&G asserts that its alleged conduct could not possibly warrant such a declaration, and that if an USF&G policy was ever issued to Southern, it would have been destroyed pursuant to standard, existing document retention/destruction policies in existence in the late 1960s, when the alleged policy was issued.

Moreover, to the extent Southern establishes the existence and material terms of an insurance policy issued by USF&G to Southern, that policy would not operate in the manner described by the declarations set forth in Count II of Southern's counterclaims.

Known Loss / Notice:  With respect to Southern's request for a "declaration that the [alleged] USF&G policies respond to suits when bodily injury takes place during the policy period, regardless of when the event causing the injury took place and regardless of when the injury becomes known or knowable," (Counterclaim ¶ 44), that declaration is inconsistent with applicable law, which precludes coverage for losses known prior to issuance of any insurance policy.

Number of Occurrences / Aggregate Limit:  With respect to Southern's request for a "declaration that the operations coverage terms of each one of the USF&G [alleged] policies respond repeatedly to each and every 'occurrence' without a total 'cap' on the insurer's liability to pay, subject only to a 'per occurrence' limit of liability," and that "[t]he same is true of products and completed operations claims," (Counterclaim ¶ 46), that declaration is inconsistent with applicable law, which provides that the products/completed operations aggregate limit applies to the types of injuries allegedly suffered by the individuals that have sued Southern for asbestos-related liabilities.

Aggregate Limits / Operations vs. Completed Operations:  With respect to Southern's request for a "declaration that the 'completed operations hazard' described in USF&G's [alleged] policies, and the corresponding aggregate limits of liability in the policies that contain aggregate limits of liability, apply only when a plaintiff is exposed to asbestos after Southern completed its installation or removal operations or work at a particular jobsite," (Counterclaim ¶ 47); Southern's request for a "declaration that any aggregate limit of liability in USF&G's [alleged] policies applies only to suits seeking the recovery of damages for bodily injury where the plaintiff was exposed to asbestos attributed to Southern after Southern completed its work at a particular jobsite," and that "no aggregate limits of liability apply to suits seeking the recovery of damages for bodily injury where the plaintiff was exposed to asbestos while Southern was performing work at a particular jobsite," (Counterclaim ¶ 48); and Southern's request for a "declaration that Southern is entitled to multiple 'per occurrence' limits of liability to resolve each of the asbestos suits," (Counterclaim ¶ 50), those declarations are inconsistent with applicable law, which provides that where the relevant work has been completed, any asbestos-related injury suffered in subsequent policy periods is subject to the completed operations aggregate limit in each subsequent policy period.

Burden of Proof / Aggregate Limits:  With respect to Southern's request for a "declaration that USF&G bears the burden of proving any exclusion or limitation of coverage, including the application of aggregate limits, if any, to particular suits and the 'exhaustion' of the aggregate limits, if any, of liability in their policies," (Counterclaim ¶ 49), and Southern's request for a "declaration that no aggregate limit of liability for product liability or completed

14

operations claims has been or can be proven, and therefore, no aggregate limit for product liability or completed operations claims exists," (Counterclaim ¶ 52), those declarations are inconsistent with applicable law, which places on the policyholder the burden of establishing coverage, including the availability of any limits of liability.

Allocation:  With respect to Southern's request for a "declaration that in the case of operations claims, the policies in effect during the conduct of the operations will apply on an 'all sums' basis, and allocation of loss will not be made to policy years when Southern does not have any available or responsive coverage," (Counterclaim ¶ 51), that declaration is inconsistent with applicable law, which requires pro rata allocation.

Southern's counterclaims are also subject to various affirmative defenses.  Specifically, Southern's assertion of the causes of action embodied in its counterclaims are beyond the expiration of the applicable statute of limitations and runs afoul of the doctrine of laches.  Due to its decision for many years not to assert any claims against USF&G, Southern has waived its current counterclaims, and is estopped from raising those claims now due to the prejudice suffered by USF&G.  Southern has failed to satisfy any likely conditions precedent in the alleged policy, including any notice provisions.  Southern has apparently been the subject of asbestos-related personal injury claims for many years, yet Southern did not provide USF&G with notice of an occurrence or a claim until May 2019, in violation of applicable law, which requires timely notice of both occurrences and claims.  Southern's counterclaims also may be barred by various exclusions, including asbestos exclusions.

### *Response of Defendant Southern Insulation, Inc.*

Plaintiff United States Fidelity and Guaranty Company ("USF&G") filed a Complaint against Defendant Southern Insulation, Inc. ("Southern") asserting a claim for declaratory relief pursuant to 28 U.S.C. § 2201 *et seq.*, and seeking a declaration that "the existence, terms, conditions, and/or provisions of any insurance policy issued to [Southern] by [USF&G] that provides liability insurance coverage for asbestos-related personal injury claims has not been established" and that "USF&G is neither obligated to provide Southern with a defense with respect to such claims, nor is USF&G obligated to indemnify any liability Southern may have as a result of such claims."  (Compl. ¶ 19, ECF No. 1.)

Southern has asserted counterclaims against USF&G, also seeking a declaration: (1) that "USF&G issued primary general liability policies to Southern for the years 1967 and 1968"; and (2) as to the contents and requirements of those policies.  (*See* Answer of Def. Southern Insulation, Inc. ¶¶42, 44-52, ECF No. 16.)

The parties' requests for a declaratory judgment are governed by the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*; *see also Trustgard Ins. Co. v. Collins*, 942 F.3d 195 (4th

Cir. 2019) ("Under the Declaratory Judgment Act, a district court, in 'a case of actual controversy within its jurisdiction . . . *may declare* the rights and other legal relations of any interested party seeking such declaration.' This Act gives federal courts discretion to decide whether to declare the rights of litigants. Rather than grant litigants a right to judgment in their case, it merely permits the courts the hear those cases." (citations omitted) (quoting 28 U.S.C. § 2201(a))); *Cohen v. Rosenstein*, 2020 WL 584075, at *1 (4th Cir. Feb. 6, 2020) ("[A] claim under the Declaratory Judgment Act provides no independent substantive basis for relief." (citation omitted)).

Southern objects to USF&G's response to Local Civ. R. 26.03(4) above as inconsistent with the Rule, which requires a party to provide "[a] summary of the claims or defense with statutory and/or case citations supporting the same," and discourages "lengthy discussions of commonly applied claims and defenses." Indeed, the vast majority of USF&G's response is argumentative without any citation to an applicable case or statute.

**(5)   Absent special instructions from the assigned judge, proposed dates for the following deadlines listed in Local Civ. Rule 16.02 (D.S.C.): (a) Exchange of Rule 26(a)(2) disclosures; and (b) Completion of discovery.**

The parties disagree as to the dates for exchange of Rule 26(a)(2) disclosures and the date for completion of discovery. USF&G agrees with the dates proposed by the Court in the Conference and Scheduling Order filed on February 13, 2020 (ECF No. 18). Southern seeks to extend all deadlines under the Conference and Scheduling Order and is proposing the following deadlines:

(a) Exchange of Rule 26(a)(2) disclosures – Plaintiff by August 31, 2020; Defendant by September 28, 2020; and

(b) Completion of discovery – October 26, 2020

**(6)   Any special circumstances that would affect the time frames applied in preparing the scheduling order.  *See generally* Local Civ. Rule 16.02(C) (D.S.C.) (Content of Scheduling Order).**

None at this time.

**(7)** **Any additional information requested in the Pre-Scheduling Order (Local Civ. Rule 16.01 (D.S.C.)) or otherwise requested by the assigned judge.**

This directive is not applicable to the present action at this time.

## **STATEMENT REGARDING MEDIATION**

Counsel certify that they have discussed the availability of mediation with their clients and discussed the advisability and timing of mediation with each other. The parties agree to mediate this case at the appropriate time and further anticipate having Timothy Gallagher, Esq. as the mediator in this matter.

*Signature Page Follows*

 */s/ William P. Davis*  
William P. Davis  
Fed. ID No.: 454  
Baker, Ravenel & Bender, L.L.P.  
3710 Landmark Drive, Suite 400  
Post Office Box 8057  
Columbia, South Carolina 29202  
Phone: (803) 799-9091  
Fax: (803) 779-3423  
wdavis@brblegal.com; 7746.2234  
*Attorneys for Plaintiff*


Harry Lee  
STEPTOE & JOHNSON LLP  
1330 Connecticut Avenue, NW  
Washington, DC 20036  
Phone: 202-429-8112; hlee@steptoe.com  
*Pro Hac Vice Application granted*  
*[Entry No. 6]*

 */s/ John B. White, Jr.*  
John B. White, Jr. (Fed. ID No. 04619)  
Marghretta H. Shisko (Fed. ID No. 11601)  
Griffin L. Lynch (Fed. ID No. 09580)  
HARRISON | WHITE, P.C.  
178 West Main Street  
P.O. Box 3547 (29304)  
Spartanburg, SC 29306  
(864) 585-5100  
jwhite@spartanlaw.com  
mshisko@spartanlaw.com  
glynch@spartanlaw.com  
*Attorneys for Defendant*

Brady Edwards  
Nancy Patterson  
Lauren McCulloch  
Morgan, Lewis & Bockius LLP  
1000 Louisiana Street, Suite 4000  
Houston, TX 77002  
(713) 890-5000  
brady.edwards@morganlewis.com  
nancy.patterson@morganlewis.com  
lauren.mcculloch@morganlewis.com  
*Pro Hac Vice Applications Forthcoming*